UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DELAANGELA MAYHO,

     Plaintiff,

v.                            Case No. 3:18cv678-MCR-HTC

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

     Defendant.

_____/

<u>REPORT AND RECOMMENDATION</u>

     This case is before the Court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff Delaangela Mayho's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI") under Title XVI of the SSA, 42 U.S.C. §§ 1381-83. Ms. Mayho's complaint was referred to the undersigned for a report and recommendation to the District Judge. Based on an independent review of the record, the undersigned finds that the Administrative Law Judge's ("ALJ") denial of benefits is supported by substantial evidence and, thus, recommends the Commissioner's decision be AFFIRMED.

## PROCEDURAL HISTORY

On July 30, 2013, Plaintiff filed applications for DIB and SSI claiming disability beginning January 4, 2013, due to fibromyalgia, post-traumatic stress disorder ("PTSD"), migraines, and neck and lower back pain.  T. 400-01, 404-13.[1] The Commissioner denied the applications initially and on reconsideration.  T. 277-86, 290-95.  After a hearing on April 4, 2017, the ALJ found Claimant not disabled under the SSA.  T. 19-30.  The Appeals Council denied a request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner.  T. 3-9.

On April 12, 2018, Ms. Mayho filed a Complaint for Review of Adverse Social Security Decision ("Complaint") with this Court.  ECF Doc. 1.  The 16-page Complaint contains over sixty (60) allegations of error by the ALJ.  *See id*.  On September 28, 2018, the Commissioner filed an answer (ECF Doc. 17) and the administrative record (ECF Doc. 17-1 through 17-23).  On October 12, 2018, the Court entered an order directing Ms. Mayho to file a memorandum in support of her Complaint by December 3, 2018.  ECF Doc. 19.  The Court's Order stated that the memorandum "shall set out clearly and concisely plaintiff's legal contentions with appropriate citation of authority for each contention advanced."  *Id.* at 2.  The Order further advised Ms. Mayho that "the court will consider only those errors specifically

---

[1] References to the record will be by "T.," for transcript, followed by the page number.

identified in the brief" and that her failure to file a memorandum "will be deemed a failure to prosecute and will result in a dismissal of the case." *Id*. at 1-2.

Despite two (2) extensions of time, giving Ms. Mayho until March 13, 2019, to submit her memorandum, none was filed. ECF Docs. 29, 32. On April 16, 2019, the Court issued an order giving Ms. Mayho another fourteen (14) days to file her memorandum and cure her non-compliance. ECF Doc. 33. Ms. Mayho failed to comply with that Order as well.[2] Thus, as an initial matter, the undersigned finds that Ms. Mayho's case should be dismissed without prejudice for failure to prosecute under Rule 41(b). *See* Fed. R. Civ. P. 41(b); *see also Wieszalski v. Colvin*, 2014 WL 1153737, at *2 (N.D. Ala. March 20, 2014) (dismissing complaint for plaintiff's failure to comply with orders requiring plaintiff to file brief where mail to plaintiff was being returned and there was no administrative record before the court); *Higgins v. Colvin*, 2015 WL 728513, at *2 (S.D. Ga. Feb. 19, 2015) (dismissing case under Rule 41(b) for plaintiff's failure to file brief or respond to show cause orders).

---

[2] The Government also did not file a memorandum in opposition to the complaint, which would have been due thirty days after Plaintiff filed her memorandum.

However, rather than resolve this matter solely on procedural grounds, the undersigned has conducted an independent review of the record and, for the reasons set forth below, recommends the Commissioner's decision be affirmed.[3]

## STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). "Even if the evidence preponderates against the [Commissioner], [the court] must affirm if the decision is supported by substantial evidence." *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the

---

[3] *See Webb v. Astrue*, 2012 WL 2577579, at *4 n.5 (N.D. Ala. July 3, 2012) ("[t]he parties to social security appeals are not even required to file briefs, which highlights the court's independent obligation on appeal to scrutinize the record below for error under a *de novo* review").

[Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  The reviewing court, however, may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

The SSA defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  To qualify as a disability, the physical or mental impairment must be so severe the plaintiff not only is unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Pursuant to 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the Commissioner analyzes a disability claim in five (5) steps: (1) whether the claimant is performing substantial gainful activity, (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether

the claimant has the residual functional capacity ("RFC") to perform her past work and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs in the national economy the claimant can perform. *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 870 (11th Cir. 2012).

## THE ALJ's FINDINGS

The ALJ made the following findings supporting his denial of disability benefits:

• Claimant has not engaged in substantial gainful activity since January 4, 2013, the alleged onset date. T. 20.

• Claimant has the following severe impairments: mild cervical spondylosis; degenerative disk disease of the lumbosacral spine, with mild stenosis; fibromyalgia; migraine headache; depression and posttraumatic stress disorder ("PTSD"). T. 20.

• Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, subpart P, Appendix I. T. 22.

• Claimant has the RFC to (1) lift/carry up to 10 pounds frequently and 20 pounds occasionally; (2) stand/walk for 4 hours; (3) sit for 6 hours; (4) no climbing of ladders, ropes or scaffolds; (5) frequent climbing of ramps/stairs; (6) occasional stooping, kneeling, crouching, crawling; (7) frequent overhead reaching

bilaterally; (8) frequent handling and fingering bilaterally; (9) avoid concentrated exposure to fumes, dusts, gases, odors and poorly ventilated areas; (10) no exposure to loud noise, defined as noise level above usual office setting; (11) avoid concentrated exposure to bright lights or sunlight, defined as no brighter than normal office setting; (12) limited to simple, routine tasks in a static work environment with few changes in routine; (13) no fast paced work or strict production quotas; and (14) occasional interaction with supervisors, co-workers and public.  T. 23.  Claimant is unable to perform any past relevant work.  T. 27.

• Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  T. 27.

## FACTUAL BACKGROUND AND MEDICAL HISTORY

### A. April 2017 Hearing Testimony

At the time of the 2017 hearing, Ms. Mayho was a 42-year old female who was 5'3.5" tall.  T. 57.  She weighed approximately 158 pounds.  T. 57.  She did not have a permanent residence, and testified, "sometimes I just stay with other people or I'll house sit because I haven't, well my lease came up I didn't get renewed."  T. 57.  With regard to her past employment, Ms. Mayho testified that her last employer was the State of Arizona Attorney General's Office, where she worked as a full-time paralegal for two (2) years.  T. 60.  Her employment with the State was terminated

after she had to take sick leave for fibromyalgia and migraine treatments.  T. 61-63.

Her last day was January 4, 2013, and she has not worked since that time.  T. 63.

Prior to her time with the State, she worked in various office positions, including as

an office manager in 2005 and 2006 for a real estate company and as a paralegal for

a law firm for two (2) years (where she also worked as a legal secretary and file

clerk).  T. 64.  Ms. Mayho has a Bachelor's degree in political science and a diploma

in legal studies as well as two (2) real estate licenses; she also has served as a notary.

T. 65.

      With regard to her health, Ms. Mayho testified that she suffers from migraine

headaches "four to five times a week."  T. 76.  She attended the hearing in a brimmed

hat and sunglasses and testified that fluorescent lights trigger her migraines.  T. 76-

77.  Ms. Mayho also suffers from fibromyalgia and testified that she experiences

pain along the back of the neck, to "this" point of her back, and in the top of her hip,

buttocks and outer thighs.  T. 78.  She also testified about pain in her arm, "right arm

really hurts worse than [] left arm," and in her right knee.  T. 78-9.  She testified she

has a sharp pain from her wrists to her elbows and that her fingertips are "kind of

like tingly and numb."  T. 81.  Ms. Mayho also experiences panic attacks or anxiety

attacks, "sometimes daily depend[ing] on the situation."  T. 79.  She testified that

she does not engage in any activities such as going to dinner, the movies or church

on a regular basis.  T. 79.  She also does not like to go to the store or anywhere that

is really crowded.  T. 82.  She suffers from panic attacks about three (3) or four (4) times a week, but if she "stays in the house it's not that bad."  T. 82.  She has not received treatment in over two (2) years and had ceased taking Maxalt for her migraines, as prescribed, for at least three (3) months.  T. 69-70, 74.

Mr. Braunig (spelled as "Browning" in the transcript), a vocational expert, also testified at the hearing.  In his testimony, Mr. Braunig was given the following hypothetical, and asked whether there are any jobs in the national economy Ms. Mayho can perform:

> If you can assume a hypothetical individual the Claimant's age, education, and work history, further assume the individual will have the following limitations.  First would be limited to lifting and carrying 20 pounds occasionally, 10 pounds frequently, standing and walking for four hours out of eight hour day, sitting for six, no climbing of ladders, ropes or scaffolds, frequent climbing of ramps and stairs, occasional stooping, kneeling, crouching, and crawling, frequent overhead reaching bilaterally, frequent handling and fingering bilaterally, person must avoid concentrated exposure to fumes, dust, gases, odors and poorly ventilated areas, the concentrated exposure to bright and sunlight, should not, should avoid areas where loud noise might be present.  No, defined as no more than, no more noise than would be appropriate for an office setting.  Person would be limited to simple, routine tasks in a static work environment with few changes in routine.  No fast- paced work or production quotas and only occasional interactions with the public, co-workers, and supervisors.

T. 83-4.  Mr. Braunig stated that there would be approximately 180,000 jobs nationally for office helpers, 674,000 jobs nationally for routing clerks and 152,000 jobs nationally for photocopying machine operators.  T. 85.  Mr.

Braunig further testified that an employee who would be 15% off task for those jobs could have an issue sustaining employment.  T. 87.  He confirmed the same issue would occur for someone who was absent two times a month.  T. 85.

### B. Medical Records

Medical records show that Ms. Mayho was seen at Barrow Neurological Associates and Arizona Pain Specialists in Scottsdale, Arizona, for low back pain and pain in her neck from December 26, 2012, to March 17, 2013.  On her initial visit in December 2012, Ms. Mayho "complained of widespread back pain originating in her cervical spine area 1.5 years ago after a fall at work[4], and gradually progressing to include her entire mid and low back."  T. 111.  She was diagnosed with fibromyalgia.  T. 113.  An MRI was performed on Ms. Mayho's spine in December 2012, which showed "decreased lordosis, otherwise fairly normal", "no significant degeneration" and "very mild scoliosis."  T. 124, 129.  The MRI of Ms. Mayho's thoracic spine was normal.  T. 129.  On January 10, 2013, Ms. Mayho returned and asked to be recommended for short term disability so she could "focus on getting her back better," and reported no changes in her symptoms.  T. 114.  She also complained that physical therapy is "a lot more work than she expected," and that the injections did not help.  T. 114.  She was approved for two (2) weeks of

---

[4] Although these records indicate that Ms. Mayho advised she fell at work, records from Arizona Sports & Spine, which treated and released her for what appears to be the same fall, state that, "patient states she fell while walking down an isle at Michael's craft store on 5/17/11."  T.  944.

short-term disability, and the impression at that time was myofascial pain syndrome. T. 116.

Ms. Mayho was also examined by Dr. Francis Nardella, a physician with Scottsdale Rheumatology, LTD. T. 149. Her initial visit was on March 7, 2013, and a physical examination by Dr. Nardella noted, "she has good range of motion of the cervical spine although there is some reduction because of pain. She has reasonably good range of motion of the lumbosacral spine with some reduction of forward flexion because of pain." T. 150. Additionally, during the same time frame, she went to Southwest Sleep Consultants for a sleep test and "no abnormalities were noted." T. 152.

Dr. Allan Block treated Ms. Mayho for migraines for two (2) months while she was in Arizona. T. 629. Dr. Block initially examined Ms. Mayho in January 2013. T. 631. Dr. Block ordered an MRI, which was performed by Scottsdale Medical Imaging, Ltd., and revealed the following impression (confirming migraines): "There are a few subtle subcortical and periventricular foci of white matter FLAIR signal hyperintensity, favored to represent the sequela of vascular headaches (migraines)." T. 634-35. In other respects, the imaging was normal. Dr. Block diagnosed Ms. Mayho with "Common (rarely classic) migraines." T. 633.

Ms. Mayho was also treated for PTSD in Arizona by Dr. Kevin Stahl in December 2012. T. 662. In a letter to Ms. Mayho, Dr. Stahl notes that he understood

she suffered from migraines, fibromyalgia and other similar ailments, and that he did not consult with her on those because he is not her primary care physician. T. 662. However, he offered that "I believe it is highly likely that all of Ms. Mayho's disorders – PTSD, MST, depression, migraines, insomnia, fibromyalgia, and irritable bowel syndrome – share a common etiology," *i.e.*, the conditions are "manifestations of affected spectrum disorder." T. 662.

In May 2013, Ms. Mayho went to the Veterans Administration Medical Center ("VAMC") seeking treatment for migraines because she lost her private insurance. T. 690. Ms. Mayho advised that, with medication (Maxalt), her migraines last 2-3 days at a time. T. 690. Dr. Friedman's records indicate that she was prescribed Topamax by Dr. Block, but "she chose not to take it." T. 704. Dr. Friedman discussed various pharmacologic intervention options with Ms. Mayho. T. 704. Beginning around August 2013, Ms. Mayho also sought and received treatment for PTSD from the VAMC. Ms. Mayho subsequently applied for and received disability benefits from the Veterans Administration.

In addition to her treating physicians, Ms. Mayho underwent physical and psychological consultative examinations as part of the SSA disability application process. Dr. McPhee examined Ms. Mayho in December 2013 for reported "'PTSD, depression, migraines, fibromyalgia, right leg, depression, fibromyalgia, multiple chemical sensitivities, back condition and RPPS/chronic knee.'" T. 1277 (quoting

Ms. Mayho). Dr. McPhee found that Ms. Mayho would be limited to lifting twenty (20) pounds occasionally, ten (10) pounds frequently, standing and walking between six (6) to eight (8) hours in an 8-hour day and stooping, kneeling, crouching or crawling occasionally and handling, reaching frequently. T. 1279. He also found that Ms. Mayho should not be exposed to "chemical, dust/fumes, gases or excessive noise." T. 1279.

Dr. An Nguyen examined Ms. Mayho for PTSD and depression. T. 1281. His functional assessment stated that Ms. Mayho "was able to understand and answer simple questions during the exam," "can carry out simple instructions and make simple decisions," "will have moderate difficulty carrying out detailed instructions; sustaining concentration; performing activities within a schedule, working in coordination with others, sustaining an ordinary routine without special supervision and completing a normal workday at a consistent pace." T. 1281-83, 1287.

Ms. Mayho then moved from Arizona to Portland, Oregon, and received treatment through Portland VAMC from approximately February 2014 through the end of the year. T. 1477. She then moved to Ohio and was evaluated by Dr. Gomes on February 6, 2015, as part of her appeal of the initial VA disability benefits denial. T. 1551. At that time, Ms. Mayho described her activities of daily living ("ADL") as including keeping her home clean, shopping, bathing, dressing, using the toilet and taking care of her hygiene. T. 1554. She also said she walked weekly and

engaged in physical therapy exercises at home.  T. 1554.  Dr. Gomes's functional assessment of Ms. Mayho included a finding that she did not need assistance with ADL or finances and was able to drive a vehicle.  T. 1558.

Around the same time, and for the same purpose, Ms. Mayho was evaluated by Dr. Bridgette Engelhardt.  T. 1560.  Dr. Engelhardt's functional assessment included maximum standing capacity of up to four (4) hours, maximum walking capacity of up to four (4) hours, sitting up to six (6) hours and lift/carry and push/pull capacity of ten (10) pounds occasionally and frequently.  T. 1565.  She did not place any limits on Ms. Mayho's workplace environmental activities.  T. 1566.

Ms. Mayho's last medical treatment prior to the February 2017 hearing was in early 2015 for fibromyalgia and June 2016 for PTSD.  In January 2015, she was treated at Beavercreek Health Center in Beavercreek, Ohio, by Dr. Michael Timpone, who recommended that she restart more physical activity and physical therapy when she moved back to Dayton for fibromyalgia and continue Maxalt and Zanaflex for migraines.  T. 1573.  In June 2016, she was seen at Odom Rural Health Care in Water Valley, Mississippi.  At that time, she advised the doctor that her migraines occurred daily, that she is constantly in pain and that her daily activity consisted of cleaning "a little."  T. 1611.  The doctor prescribed amitriptyline for depression and sleep, referred her to a psychiatrist, recommended that she get involved with activities outside of her home and recommended a therapist.  T. 1612.

## <u>ANALYSIS</u>

As set forth above, the ALJ determined that Ms. Mayho was engaged in substantial gainful activity prior to her alleged onset date; that she suffered from severe impairments and that the severe impairments prevented her from performing her past work.  Thus, the only issues for review relate to the ALJ's findings at steps 3 and 5.  In other words, for this review, the undersigned must answer two questions:

1.      Is there substantial evidence to support the ALJ's determination that Ms. Mayho's mental impairments (namely her PTSD and depression) do not qualify as listed impairments under 20 CFR Part 404, Subpart A, Appendix I; and

2.      Is there substantial evidence to support the ALJ's determination that Ms. Mayho has the RFC to perform light work with certain limitations, and that even with those limitations there are jobs that exist in significant numbers in the national economy that she can perform.

The undersigned answers both questions in the affirmative.

### A. Mental Impairment Determination

For a mental impairment to qualify as a "listed impairment" under 20 CFR Part 404, Subpart P, Appendix I, it must meet the medical criteria for a mental disorder and it must also result in an "extreme" limitation of one (1) area of mental functioning or "marked" limitation of two (2) areas of mental functioning.  20 CFR Part CFR 404, Subpart P, Appendix I, 12.00 Mental Disorders; *See Moncada v.*

*Chater,* 60 F.3d 521, 523 (9th Cir. 1995) (a mere diagnosis of a listed condition does not establish that claimant meets the listing requirements).  Here, although the ALJ determined that Ms. Mayho suffers from medically determinable mental impairments, he found that the impairments do not result in an "extreme" limitation. The ALJ went through the four (4) areas of mental functioning applicable to depression and PTSD and concluded that Ms. Mayho's mental impairments were either mildly limiting or moderately limiting.  T. 22.  Specifically, the ALJ determined that Ms. Mayho's mental impairments result in (1) mild limitation in understanding, remembering or applying information; (2) moderate limitation in interacting with others; (3) moderate limitation in maintaining concentration; and (4) moderate limitation in adapting or managing oneself.  T. 22.

The record shows that Ms. Mayho was treated or examined by the following physicians for PTSD and Depression: Drs. Block, Stahl, Friedman, Feld, Nguyen, Gomes and Timpone.  None of these doctors identified Ms. Mayho as suffering from extreme limitations in understanding, remembering or applying information; interaction with others; concentration or managing oneself.  To the contrary, Dr. Block noted that Ms. Mayho's "naming, comprehension, & repetition [were] intact" and her "[c]oncentration & historical recall are good." T. 632.  Dr. Nguyen's records indicate that Ms. Mayho is "estimated to function in the average range of intelligence" and that "her not being able to recall the three objects does not appear

to be representative of a cognitive deficit or memory problem at this time." T. 1286.

In Dr. Timpone's findings, he noted "her speech is normal and behavior is normal.

Judgment and thought content normal. Cognition and memory are normal." T.

1586. Additionally, as referenced throughout the medical records, including those

of Drs. Gomes and Nguyen, *supra,* Ms. Mayho is independent in ADL, being able

to drive, live alone and manage her financial affairs. Accordingly, the undersigned

finds that the ALJ's determination that Ms. Mayho's mental impairments do not

qualify as listed impairments is supported by substantial evidence in the record. *See*

*Giese v. Barnhart*, 55 F. App'x 799, 801 (9th Cir. 2002) (affirming ALJ's denial

where the record showed "acceptable medical sources" did *not* find "at least two" of

the four (4) Part B conditions).

## B. RFC Determination

In determining a claimant's RFC, the ALJ is required to consider all relevant

evidence, including medical records and opinions, records and opinions of other

sources and the testimony of the claimant as well as lay witnesses, if any. Here, the

ALJ considered "all symptoms and the extent to which those symptoms can

reasonably be accepted as consistent with the objective medical evidence and other

evidence"; opinions from treating and non-treating State Agency physicians; Ms.

Mayho's testimony; and the testimony of the vocational expert. T. 24-27. The ALJ's

RFC determination is supported by substantial evidence in the record.

State Agency physicians also reviewed Ms. Mayho's medical records, including the records of her treating physicians, and determined that she could perform simple tasks and light work. As recognized in the regulations, state agency medical and psychological consultants are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. *See* 20 C.F.R. § 404.1513a(b)(1); 20 C.F.R. § 416.913a(b)(1). An ALJ may rely upon, and must consider, the opinions of state agency consultants. *See Voronova v. Astrue*, 2012 WL 2384414, *5 (M.D. Fla. 2012) (acknowledging that ALJ is required to consider opinions of non-examining state agency medical and psychological consultants).

One of the physicians, Dr. David Yandell, noted that Ms. Mayho "retains the ability to perform simple job tasks on a sustained basis." T. 183. He stated that Ms. Mayho's ADL include preparing frozen meals, cleaning house, driving, shopping, managing finances, reading and volunteering and that Ms. Mayho interacts socially. T. 176. On reconsideration, state agency consultant Dr. Thomas Davenport agreed Ms. Mayho could perform simple tasks. T. 225, 247. The ALJ did not err in assigning significant weight to these opinions based on their consistency with the medical records. *See Brito v. Comm'r,* 687 F. App'x 801, 803 (11th Cir. 2017).

Dr. McPhee, an examining physician, opined that Ms. Mayho could lift twenty (20) pounds occasionally and ten (10) pounds frequently and stand, walk and sit for

six (6) to eight (8) hours in an 8-hour day.  T. 1279.  This opinion was based on his clinical findings, which included that Ms. Mayho "was able to get up from the chair, bend, squat, rise and get up onto the examination table without difficulty" and that "[h]er four extremities moved through a full range of motion at the shoulders, elbow, wrists, hips, knees and ankles."  T. 1278.  Additionally, Dr. McPhee's records indicate "there was no focal neurological weakness on manual muscle testing."  T. 1279.  The ALJ, thus, did not err in assigning great weight to Dr. McPhee's opinion, finding it consistent with the medical records and his clinical examination.

Dr. Nguyen, who also performed a consultative examination, indicated Ms. Mayho could recall simple instructions and found her to have moderate limitations adapting to change and interacting socially.  He also noted that she has moderate difficulty with attention and concentration.  The ALJ did not assign as much weight to Dr. Nguyen's opinion, finding that the doctor gave vague opinions regarding Ms. Mayho's moderate limitations.  T. 24.  Indeed, despite noting that Ms. Mayho will have moderate difficulty responding appropriately to work setting changes, Dr. Nguyen also noted that "she can take appropriate precautions, travel in unfamiliar places and set realistic goals independently," "her thinking was logical and goal directed" and "she did not appear to be easily distracted."  T. 1283-84, 1287. Moreover, in the summary of his evaluation, Dr. Nguyen stated, "she seemed hesitant to provide details and information and appeared to be intentionally vague

when providing information." T. 1286.  He also noted Ms. Mayho is capable of managing benefit payments in her best interest.  T. 1286.

The ALJ gave some weight to the opinion of Dr. Gomes, who also performed a consultative examination on Ms. Mayho.  The ALJ explained that Dr. Gomes's assessment came mostly from Ms. Mayho herself.  Additionally, Dr. Gomes noted "her evaluation performance is not consistent [with] her past achievements or consistent[ly] maintaining her ADLs.  She is able to drive a vehicle but required repeats of directions and had significant concentration and memory difficulties." T. 1558.  With regard to Dr. Engelhardt, another consultative physician, the ALJ determined that her opinion that Ms. Mayho was limited to lifting ten (10) pounds (rather than the twenty (20) he ultimately assigned) "is not justified in view of the physicians repeated comments of the claimant's poor efforts during the examination." T. 24.  The record supports this finding.  Indeed, Dr. Engelhardt's records state "the claimant shows very poor effort throughout the range of motion determination." T. 1563.  Moreover, Dr. Engelhardt did not place any limits on Ms. Mayho's workplace environmental activities.  T. 1566.

Dr. Feld is a Veterans Evaluation Services Clinician who evaluated Ms. Mayho in 2013 as part of her disability application with the VA.  Dr. Feld concluded that Ms. Mayho "cannot function at work during migraine episodes.  She has to be in a dark room with limited light and sound exposure." T. 1368.  The ALJ gave little

weight to Dr. Feld's opinion because Ms. Mayho "has done little recently with treatment for migraines and has a long history of non-compliance with her medications." T. 23. The ALJ's determination is supported by substantial evidence in the record. *See* 20 CFR § 404.1529 (noting an ALJ will consider "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken" when evaluating the limiting effects of symptoms).

Dr. Feld's evaluation is limited to a 2-page Disability Benefits Questionnaire which he completed for the VA, containing little more than checked boxes and a history provided by Ms. Mayho. T. 1365-66. Although Dr. Feld checked "yes" in response to the question of whether the "Veteran's treatment plan include taking medication for the diagnosed condition," and identified the treatment as Maxalt and Tramadol, his response to whether Ms. Mayho's headache condition impacts her ability to work did not consider her non-compliance with the prescribed medications. T. 1365-68. The records from Dr. Block, Ms. Mayho's treating physician just prior to the time she was evaluated by Dr. Feld, however, state that although Ms. Mayho was prescribed Topamax for migraines, "she had not started it yet 'because she wanted to think about it more.'" T. 629. Dr. Block's records also indicate Ms. Mayho "declin[ed] preventive treatment at this time, preferring to follow her symptoms for now and use Maxalt PRN." T. 630. Additionally, during the hearing, Ms. Mayho testified that she had not been able to control her migraines because she

did not have medicine, which she was still waiting for from the VA. T. 69. Given the lack of explanations for his conclusions and the ALJ's articulated reason for assigning little weight to Dr. Feld's opinion, the undersigned finds that the ALJ's decision is supported by substantial evidence in the record. *See Ruiz v. Colvin*, 638 F. App'x 604, 606 (9th Cir. 2016) (citing *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (rejecting psychological evaluations because they were in the form of a check-off report that lacked explanations for their conclusions)).

Although controlling weight should be given to a treating physician's opinion absent good cause, none of Ms. Mayho's treating physicians provided an opinion as to her RFC. *See Eaton v. Colvin,* 180 F. Supp. 3d 1037, 1059 (S.D. Ala. 2016). ("Where the ALJ articulates specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error."). Dr. Stahl, who treated Ms. Mayho for PTSD and signed her disability application for the VA, did not provide his treating notes – just a letter (T. 662), and gave no specific opinions regarding whether Ms. Mayho could work. Instead, Dr. Stahl simply checked some boxes on the VA disability application indicating that her PTSD symptoms cause "impairment" in "social, occupational or other important areas of functioning"; her panic and depression affect her ability to function independently, appropriately and effectively; and she has "difficulty adapting to stressful circumstances, including work or a work like

setting." T. 783-84. These opinions are conclusory and do not have to be afforded controlling weight. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairment); *see also, Ruiz*, 638 F. App'x at 606, *supra*. Additionally, Dr. Stahl did not provide any opinion regarding whether Ms. Mayho could perform work within certain limitations.

Similarly, Dr. Nardella, who completed Ms. Mayho's disability application with the VA based on fibromyalgia, also provided only generalized opinions regarding Ms. Mayho's ability to work by checking certain boxes on the application. T. 1012. As the ALJ correctly noted in giving only some weight to the VA's disability determination, the objective medical evidence does not support the determination that Ms. Mayho is precluded from performing any and all work. T. 24.

Although a disability determination by the VA should be given "great weight" by the ALJ, it is not binding. *Bloodsworth*, 703 F.2d at 1241 (holding that "findings of disability by another agency, although not binding on the [Commissioner], are entitled to great weight."). Here, the ALJ considered the VA's determination but chose to give it only some weight. Given the issues identified above with regard to the findings of Drs. Stahl, Feldman and Nardella, the ALJ did not err in assigning

less than great weight to the VA's determination of disability. *See Boyette v. Commissioner*, 605 F. App'x 777, 779-80 (11th Cir. 2015) (affirming ALJ's finding of no disability based on ALJ's explanation of weight assigned to VA determination of disability and basis for same); *Pearson v. Astrue*, 271 F. App'x 979, 980 (11th Cir. 2008) (finding records support ALJ's conclusion that claimant did not qualify for disability under SSA even though he was given a total disability rating by the VA).

Finally, the ALJ considered Ms. Mayho's own testimony regarding her pain and symptoms and accepted only that information which was consistent with the objective medical or other evidence.  T. 25.  A claimant, like Ms. Mayho, who attempts to prove disability based on subjective complaints must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing her medical condition could reasonably be expected to give rise to the alleged symptoms.  *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); SSR 96-7p; *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).  If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes she has an impairment that could reasonably be expected to produce the symptoms alleged, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on the claimant's ability to work.  *See* 20 C.F.R. §§ 404.1529(c), (d), 416.929(c), (d); SSR 96-7p; *Wilson*, 284

F.3d at 1225-26.  Notably, in determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."  *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Here, the ALJ found Ms. Mayho's allegations and subjective complaints were inconsistent with her ADL.  The records show that Ms. Mayho was able to drive, prepare her own food, shop and attend church.  Indeed, at her hearing, Ms. Mayho testified that she house sits for friends and lives alone.  T. 58.  An ALJ may consider a claimant's daily activities when evaluating her subjective complaints and RFC. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987).  Additionally, the records, including findings made by several of the treating, examining and State Agency physicians, support the ALJ's concerns over Ms. Mayho's credibility.

Ms. Mayho was treated at Arizona Sports & Spine from May 2011 to March 2012, for a fall at Michael's craft store.  T. 944.  She was released in March 2012 with "no permanent impairment."  T. 944.  Yet, later that year, she started treatment at Barrow Neurological Assoc. for low back pain and neck pain, this time telling physicians that the pain originated 1.5 years ago when she fell at work.  T. 111. Despite the absence of any significant clinical findings supporting her symptoms, she started physical therapy and the doctor's note indicates that, "Pt does not c/o TIP

or jump when I distract her and palpate her spinous processes, paraspinous musculature (which displays spasm) or her trigger point areas from last visit, but when asked, she states they are tender." T. 115. Dr. Hooper, who treated Ms. Mayho at Southwest Sleep Consultants, stated, "I have no explanation for her current symptoms." T. 152. Dr. Yandell identified Ms. Mayho as having "some credibility issues." T. 173. Dr. Davenport commented that she "over-report[ed] her symptoms and her "answers were not congruent with her level of attained education." T. 238. Thus, according to Dr. Davenport, "the allegation of disability is partially credible." T. 238. The ALJ's reasons for discounting plaintiff's credibility are supported by substantial evidence in the record. *See Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 814 (11th Cir. 2017) (holding "substantial evidence supports the ALJ's determination that claimant's statements about her symptoms are not credible because those statements were inconsistent with the medical evidence in this case and because she had given inconsistent statements throughout the record"). Although the medical findings may provide an objective basis for some of Ms. Mayho's impairments and other symptoms, they do not reflect symptoms of disabling severity. Although Ms. Mayho testified to severe limitations that preclude her from working, there simply is no indication in the record Ms. Mayho suffers from any condition precluding her from working at the prescribed RFC. Ms. Mayho's lack of compliance with treatment also supports such a finding. *See* 20

C.F.R. §§ 404.1527(d)(4), 404.1529(c)(3)(iv)-(vi); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) ("We have held that 'refusal to follow prescribed medical treatment without good reason will preclude a finding of disability'" (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)); *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 777 (11th Cir. 2016) (holding that the ALJ properly relied on the claimant's failure to comply with treatment as support for his decision).

## C. Vocational Expert

The ALJ's determination that there are other jobs in the national economy available to Ms. Mayho is also supported by substantial evidence. In response to a hypothetical question that included all the limitations resulting from Ms. Mayho's impairments, Mr. Braunig determined that Ms. Mayho could perform light level office work, such as office helper, routing clerk or photocopying machine operator. T. 83-85. He further testified Ms. Mayho could perform the duties of those jobs even with recurring migraines. *See* T. 83-85. Although Mr. Braunig acknowledged that Ms. Mayho might not be able to sustain the work (*i.e.*, continue employment with the same employer) if she had two or more absences a month or was off-task by 15%, there is no credible or objective evidence in the record showing that Ms. Mayho would require two or more absences a month, particularly if she was compliant with her prescription medications, or that she would be off-task by 15%.

## CONCLUSION

For the reasons set forth above, the undersigned finds the Commissioner's decision applied the proper legal standards and is supported by substantial evidence; therefore, it should be affirmed.[5]

Accordingly, it is respectfully RECOMMENDED:

1.      That the decision of the Commissioner be AFFIRMED and Ms. Mayho's applications for Disability Insurance Benefits and Supplemental Security Income DENIED.

2.      That the clerk be directed to enter judgment in favor of the Commissioner and close the file.

At Pensacola, Florida, this 8th day of July, 2019.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

---

[5] The Court notes that, to the extent it reviewed the legal principles upon which the ALJ's decision is based, it conducted a *de novo* review.  *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being a served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.